*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0148p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re: STEVE A. MCKENZIE,

                               *Debtor.*

_____

GRANT, KONVALINKA & HARRISON, PC,

                               *Appellant*,

        *v.*

RICHARD L. BANKS, ANDREW B. MORGAN, and RICHARD BANKS & ASSOC., P.C. (12-5874); STEVE A. MCKENZIE and C. KENNETH STILL (12-5874 & 12-5875); F. SCOTT LEROY, d/b/a LeRoy & Bickerstaff, LEROY & BICKERSTAFF, PLLC, and LEROY, HURST & BICKERSTAFF, PLLC, (12-5874 & 12-5876),

                               *Appellees.*

Nos. 12-5874/5875/5876

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
Nos. 1:11-cv-00258; 1:11-cv-00320; 1:11-cv-00346.
Curtis L. Collier, Chief District Judge.

Argued: May 2, 2013

Decided and Filed: May 24, 2013

Before: MARTIN, GUY, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John P. Konvalinka, GRANT, KONVALINKA & HARRISON, P.C., Chattanooga, Tennessee, for Appellant. Jerrold D. Farinash, KENNEDY, KOONTZ & FARINASH, Chattanooga, Tennessee, for Still Appellees in 12-5874 and 12-5875. Clinton P. Sanko, BAKER DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Chattanooga, Tennessee, for LeRoy Appellees in 12-5874 and 12-5876. **ON BRIEF:** John P. Konvalinka, Harry R. Cash, GRANT, KONVALINKA & HARRISON, P.C., Chattanooga, Tennessee, for Appellant. Jerrold D. Farinash, Andrea Hayduk, KENNEDY, KOONTZ & FARINASH, Chattanooga, Tennessee, for Still Appellees in 12-5874 and 12-5875. Clinton P. Sanko, Joshua A. Powers, BAKER DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Chattanooga,

1

Tennessee, for LeRoy Appellees in 12-5874 and 12-5876.  M. Andrew Pippenger, LEITNER, WILLIAMS, DOOLEY & NAPOLITAN PLLC, Chattanooga, Tennessee, for Banks Appellees in 12-5874.

————————————

**OPINION**

————————————

RALPH B. GUY, JR., Circuit Judge.  Grant, Konvalinka & Harrison, P.C., (GKH) appeals from the district court's order affirming the bankruptcy court's decisions dismissing the two complaints it filed in bankruptcy court, and denying it leave to file a third complaint in state court, each of which alleged malicious prosecution and abuse of process against Bankruptcy Trustee C. Kenneth Still, individually, and the attorneys who represented him. *See In re McKenzie*, 476 B.R. 515 (E.D. Tenn. 2012).  GKH, a law firm representing itself here and in all the proceedings, alleged that the Trustee and his attorneys filed and pursued three separate actions against GKH on behalf of the bankruptcy estate of the Debtor Steve "Toby" McKenzie that were meritless, without foundation, and brought for purposes of annoyance or harassment.[1]

GKH insists that the bankruptcy court erred in dismissing GKH's two adversary complaints on grounds of quasi-judicial immunity and/or failure to state a claim upon which relief may be granted.  *See Grant, Konvalinka & Harrison, PC (GKH) v. Banks et al. (In re McKenzie)*, No. 11-ap-1016, 2011 WL 3585622 (Bankr. E.D. Tenn. Aug 12, 2011); *GKH v. F. Scott LeRoy, d/b/a LeRoy & Bickerstaff, et al. (In re McKenzie)*, No. 11-ap-1110, 2011 WL 4600407 (Bankr. E.D. Tenn. Sept. 30, 2011).  GKH also contends that the bankruptcy court abused its discretion in denying GKH's motions for leave to file its third complaint in state court, and to alter, amend, or set aside that order.  *See In re McKenzie*, No. 08-16378, 2011 WL 3439081 (Bankr. E.D. Tenn. Aug. 5, 2011); *In*

---

[1]The attorneys sued by GKH included:  (1) F. Scott LeRoy, Esq., general counsel for the Trustee, and the firms F. Scott Leroy d/b/a Leroy & Bickerstaff, PLLC; LeRoy and Bickerstaff, PLLC; and Hurst and Bickerstaff, PLLC (LeRoy Defendants); and (2) Richard Banks, Esq., special litigation counsel to the Trustee; Andrew Morgan, Esq.; and Richard Banks & Assocs., PC (Banks Defendants).  Shortly before oral argument, a partial settlement was reached and GKH dismissed the appeal as to the Banks Defendants.

*re McKenzie*, No. 08-16378, 2011 WL 4481234 (Bankr. E.D. Tenn. Sept. 27, 2011).  For the reasons that follow, we affirm.[2]

**I.**

The bankruptcy case began as an involuntary petition brought by a group of McKenzie's creditors on November 20, 2008, and was consolidated with the voluntary Chapter 11 petition filed by McKenzie on December 20, 2008.  C. Kenneth Still was appointed Chapter 11 Trustee on February 20, 2009, and continued as trustee after the case was converted to a Chapter 7 proceeding on June 14, 2010 (although a notice of the appointment was not filed by the United States Trustee until December 27, 2012).  The Trustee, through counsel appointed by the bankruptcy court, brought three actions against GKH over a two-week period in late July and early August 2010.

After the last of those three actions was resolved in early 2011, GKH began pursuing its own claims against the Trustee and his attorneys culminating in the appeals at issue here.  GKH unsuccessfully sought leave to file each of its complaints against the Trustee and his attorneys in state court, but has only appealed from the denial of leave with respect to the third complaint.  Without repeating the procedural background and related proceedings fully detailed in the bankruptcy court's orders, a brief summary is necessary to the discussion of the issues before us.[3]

On July 23, 2010, the Trustee filed an adversary proceeding in bankruptcy court against GKH, only, seeking the turnover of documents and records alleged to constitute property of the estate pursuant to 11 U.S.C. § 542.  That complaint, referred to here as the Turnover Action, alleged that GKH was the primary law firm representing McKenzie and sought records pertaining to more than 50 entities in which McKenzie allegedly had an interest.  GKH expressed willingness to make some records available for inspection

---

[2]The parties' motions to supplement the record in 12-5875, and to either strike the reply or allow a sur-reply in 12-5875 and 12-5876, are denied.

[3]GKH is also a creditor in the bankruptcy case, having filed a claim allegedly secured by the Debtor's pledge of his equity interests in a number of entities.  That claim has been disputed and remains unresolved.

and copying, but also resisted demands for turnover of records pertaining to entities in which the Debtor was alleged to have only a partial interest. After a pretrial hearing held October 28, 2010, the Trustee and GKH entered into an agreed protective order and stipulated to dismissal of the Turnover Action without prejudice. The dismissal followed on November 5, 2010.

The Trustee's other two actions, filed on August 5, and 6, 2010, both arose from the same post-petition transfer of a 50-acre parcel of land from the Cleveland Auto Mall LLC (CAM) (an entity in which McKenzie had a 50% interest) to a newly formed entity called Exit 20 Auto Mall LLC (Exit 20) (an entity in which McKenzie had no interest). The "50-Acre Transfer" occurred on December 10, 2008—between the filing of the involuntary and voluntary petitions in bankruptcy—and stripped CAM's only remaining significant asset. It was alleged that McKenzie conveyed his interest in the property while his cognitive abilities were impaired by a serious medical condition. What actually happened is not clear from the record, but it is also not material to the issues on appeal.[4]

Specifically, the Trustee filed the Avoidance Action as an adversary proceeding in bankruptcy court, alleging a violation of the automatic stay (11 U.S.C. § 362(k)); seeking avoidance on the grounds of preferential and/or fraudulent transfer (11 U.S.C. §§ 547(b) and 544(g)); and making claims for equitable subordination and against insiders with respect to the 50-Acre Transfer (11 U.S.C. § 510(c)). Attached to the complaint was the warranty deed dated December 10, 2008, signed by McKenzie as managing member of CAM, which stated that it had been prepared by and was to be returned to GKH. An affidavit signed by Bowers represented the value of the property to be $4 million.

GKH and the other defendants successfully moved to dismiss the Trustee's Avoidance Action. Bankruptcy Court Judge John Cook found that, despite the dubious

---

[4]These two actions were brought against not only GKH, but also Nelson Bowers II, McKenzie's business partner in CAM (and other entities); John Anderson, one of GKH's attorneys; and the Exit 20 LLC, in which Bowers, Anderson and others were members. A lender of $3.8 million secured by the property was also named as a defendant in one action.

circumstances allegedly surrounding the transfer, the Trustee could not establish any of his claims because he failed to allege a transfer of property of the estate, property of the debtor, or an interest in property of the debtor.  Judge Cook explained that, under Tennessee law and notwithstanding the prior administrative dissolution of CAM, CAM continued to exist as a separate legal entity such that the 50-acre parcel remained the separate property of CAM.  Therefore, although the Debtor's interest in CAM became part of the bankruptcy estate, the real property owned by CAM did not.  This distinction is at the heart of GKH's claims of malicious prosecution and abuse of process by the Trustee.  Defendants' motions to dismiss were granted on December 16, 2010, and no appeal was filed.  The Trustee subsequently filed a motion for relief from judgment under Fed. R. Civ. P. 60(b) (incorporated by Fed. R. Bankr. P. 9024), which was denied.[5]

Finally, the third complaint filed in the Chancery Court for Bradley County, Tennessee, by the Trustee, together with the Debtor, asserted "non-core" claims of breach of fiduciary duty, assisting the breach of fiduciary duty, and civil conspiracy to commit fraud in connection with McKenzie's transfer of the 50-acre parcel (Bradley County Complaint).  GKH was alleged to have represented McKenzie under a conflict of interest and to have drafted the documents involved in the 50-Acre Transfer.  The defendants' filed several motions to dismiss, relying on the one-year statute of limitations for some claims; denying that Bowers owed McKenzie any fiduciary duty; and arguing that there could be no conspiracy because there was no violation of the stay, or any fraudulent transfer, fraudulent misrepresentation, or fraudulent concealment. The defendants also argued that dismissal of the Avoidance Action on December 16, 2010, should bar this action as well.  Several of the Trustee's claims were dismissed on statute of limitations grounds in January 2011, and a stipulated order stating that the dismissal was final as to all defendants and all counts was entered in March 2011.  No appeal was filed.

---

[5]GKH points to the filing of the Rule 60(b) motion in support of its abuse of process claim, but has failed to acknowledge that the Trustee was seeking relief with respect to Bowers and not GKH in connection with the late discovery of an undocumented post-petition transaction involving CAM.

GKH then brought three actions of its own against the Trustee and his attorneys alleging malicious prosecution and abuse of process for having initiated and pursued each of the three lawsuits against GKH.  GKH requested leave to file those suits in state court under the common law *Barton* doctrine, which limits jurisdiction over certain claims to bankruptcy court.  *See Allard v. Weitzman (In re Delorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (discussing *Barton v. Barbour*, 104 U.S. 126, 127 (1881)).

The district court consolidated the appeals from four detailed orders entered in GKH's three actions during August and September 2011.  In those four orders, Bankruptcy Court Judge Shelley Rucker:  (1) dismissed GKH's adversary proceeding alleging claims related to the Avoidance Action as barred by quasi-judicial immunity; (2) dismissed GKH's adversary proceeding alleging claims based on the Turnover Action on alternative grounds of quasi-judicial immunity and failure to state a claim; (3) denied GKH's motion for leave to file its third complaint in state court asserting claims based on the Bradley County Complaint; and (4) denied GKH's motion to alter, amend, or set aside that order to account for GKH's later determination that the Debtor should be included as an "indispensable party."  The district court affirmed the bankruptcy court's decisions in all respects, and these appeals followed.

## II.

On appeal following the district court's review of the bankruptcy court's decisions, we review the bankruptcy court's orders directly rather than the intermediate decision of the district court.  *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 319 (6th Cir. 2006).  We review the legal conclusions de novo and any factual findings for clear error.  *Id.*; *Heavrin v. J. Baxter Schilling (In re Triple S Restaurants, Inc.)*, 519 F.3d 575, 578 (6th Cir. 2008).  To the extent that GKH has argued error by the district court, we construe the arguments as challenging the bankruptcy court's decisions directly.

Before turning to those arguments, however, it is important to note that GKH's appeals, both in the district court and here, have not challenged the bankruptcy court's

application of the same standards to the Trustee and his attorneys. "[A]s a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, [when] they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *Allard*, 991 F.2d at 1241; *see also Lowenbraun*, 453 F.3d at 321; *Benton v. Cory*, No. 10:-cv-00907, 2010 WL 5056018. at *5-6 (D. Nev. Dec. 3, 2010), *aff'd* 474 F. App'x 622 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1637 (2013). Any argument to the contrary is considered waived because it was not raised in the district court or on appeal to this court. *See City of Columbus v. Hotels.com, L.P.*, 693 F.3d 642, 652 (6th Cir. 2012).

## III.

We review the bankruptcy court's decisions granting the defendants' motions to dismiss de novo, and apply the same standards whether the motion sought dismissal under Fed. R. Civ. P. 12(b)(6), or judgment on the pleadings under Fed. R. Civ. P. 12(c) (both incorporated by Fed. R. Bankr. P. 7012(b)). *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss may be granted on the basis of an affirmative defense if the facts conclusively establish the defense as a matter of law. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). Despite GKH's arguments to the contrary, we find no error in the bankruptcy court's determination that the claims of malicious prosecution and abuse of process in connection with the Trustee's Avoidance and Turnover Actions were barred by quasi-judicial immunity. As such, we need not consider the alternative grounds for dismissal on the merits.

## A.      Quasi-Judicial Immunity

Judges enjoy absolute immunity from suit for money damages for actions taken in their judicial capacity, except when taken in the complete absence of jurisdiction.

*Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).   Extension of such immunity to officials performing quasi-judicial duties has been recognized for "those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* (extending immunity to probate court administrator).   This determination is made using a "functional" approach, under which courts look to the nature of the function being performed rather than the identity of the actor performing it.   *Id.*; *see also Forrester v. White*, 484 U.S. 219, 229 (1988).   Also considered is "the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester*, 484 U.S. at 224.   Bankruptcy trustees serve in a variety of functions and may be immune for some but not all of those functions.   *Weissman v. Hassett*, 47 B.R. 462, 466 (S.D.N.Y. 1985).

Case law governing personal liability for trustees has been described by several courts as confusing and sometimes contradictory.   *See, e.g.*, *Kirk v. Hendon (In re Heinsohn)*, 231 B.R. 48, 64 (Bankr. E.D. Tenn. 1999), *aff'd* 247 B.R. 237 (E.D. Tenn. 2000); *Schechter v. State of Ill. (In re Markos Gurnee P'ship)*, 182 B.R. 211, 215 (Bankr. N.D. Ill. 1995), *aff'd* 195 B.R. 380 (N.D. Ill. 1996).   A considered attempt to sort out the law is found in the bankruptcy court's decision in *Heinsohn*, which was relied upon by the bankruptcy court here.   *See also In re Cutright*, No. 08-70160-SCS, 2012 WL 1945703, at *12-13 (Bankr. E.D. Va. May 30, 2012) (distinguishing between beneficiary claims for breach of fiduciary duty and non-beneficiary claims that may be barred by quasi-judicial immunity).

It is generally accepted, albeit under varying rationales, that quasi-judicial immunity does not extend to claims against a trustee by beneficiaries of the estate for breach of fiduciary duty.   *See In re Heinsohn*, 231 B.R. at 65; *Schechter*, 182 B.R. at 218-19.   Although there is disagreement among the circuits concerning the applicable standard of proof, this court has held that:   "A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties." *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 462 (6th Cir. 1982); *see also In re Heinsohn*, 231

B.R. at 65 n.10 (describing split over whether trustee may incur personal liability for negligent or only willful breach of fiduciary duty).  Here, GKH did not allege claims for breach of fiduciary duty by the Trustee or his attorneys.

Further, as GKH concedes, a bankruptcy trustee is ordinarily entitled to quasi-judicial (or derivative) immunity from suit by third parties for actions taken in his official capacity.  *See, e.g.*, *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 883 (BAP 9th Cir. 1995); *Schechter*, 182 B.R. at 216-17; *Weissman*, 47 B.R. at 466 ("trustees and receivers acting as officers of the court to conserve the bankrupt estate's assets are immune from suit").  For example, in *Heinsohn*, the district court affirmed the determination that the trustee was entitled to quasi-judicial immunity from suit for malicious prosecution in connection with having reported possible criminal violations discovered in the course of the bankruptcy proceedings.  Also, this court concluded in *Lowenbraun* that counsel for the trustee was entitled to absolute immunity with respect to state law claims brought by the non-debtor wife arising out of a contempt motion filed against her in bankruptcy court.  453 F.3d 322-23.  We emphasized that the defendant's "role as counsel for the trustee permitted him to investigate [the non-debtor wife's] transfer and to recover assets properly belonging to the bankruptcy estate."  *Id*. at 323.

Here, GKH urges us to find that quasi-judicial immunity did not apply to bar its claims because (1) the Trustee's actions were *ultra vires* (or outside the scope of his authority); and (2) the Trustee acted without prior bankruptcy court approval.  These are the same arguments that were made to and rejected by the bankruptcy court.  *See GKH v. Banks*, 2011 WL 3585622, at *10-13; *GKH v. LeRoy*, 2011 WL 4600407, at *14-16.

## 1.    Prior Court Approval

Taking the latter contention first, GKH relies almost entirely on the highlighted language from the following discussion in *Kashani*:

> As an officer of the court, the trustee is entitled to a form of derivative judicial immunity from liability for actions carried out within the scope of the trustee's official duties.  A trustee is entitled to such immunity only if the trustee is acting within the scope of authority conferred upon

the trustee by the appropriate statute(s) or the court.  While a trustee is allowed to make reasonable mistakes where discretion is allowed, a trustee may be sued for intentional or negligent actions which amount to violations of the duties imposed upon the trustee by law.  The trustee has a duty to preserve assets of the estate while exercising the care and diligence of an ordinarily prudent person under similar circumstances.

Although there appears to be a conflict between the concept of judicial immunity and the ability to sue the trustee, *the courts have established certain standards and instructions whereby the trustees can protect themselves by complying with these standards and, thus, gain judicial immunity.  Those instructions include:  the trustee should give notice to the debtor and obtain prior court approval of the proposed act; the disclosure by the trustee to the court in furtherance of the requested approval must be candid; and the act must be within the trustee's official duties.*

*Kashani*, 190 B.R. at 883-84 (citations omitted) (emphasis added).  Reading this passage as a whole, it explains that a trustee may shield himself from personal liability for breach of his fiduciary duties by obtaining prior approval for acts within the scope of his official duties.  It does not support GKH's assertion that prior court approval is *always* required.

Indeed, nothing in *Kashani*, or any other case, can be understood to require prior court approval for his actions in order for a bankruptcy trustee to invoke quasi-judicial immunity for claims other than for breach of fiduciary duty.  *See, e.g.*, *In re Heinsohn*, 231 B.R. at 65 (suggesting that trustee is immune from suit for breach of fiduciary duty by beneficiaries of the estate only when "acting pursuant to specific instructions from the court"); *Schechter*, 182 B.R. at 219-20 (describing the judicial immunity a trustee might secure by obtaining prior court approval as protection against claims for breach of bankruptcy-related fiduciary duties).  As the bankruptcy court in *Schechter* explained:

The general personal immunity of bankruptcy trustees—which applies to claims other than for breach of bankruptcy-related fiduciary duties, arising out of the operation of the estate—renders the estate rather than the trustee liable without the need for notice or a court order of any kind.

182 B.R. at 220.  As one court explained, although the trustee has "immunity vis-a-vis third parties for actions within the scope of his official duties, that immunity neither extends to *ultra vires* acts, nor protects the trustee against claims for breach of fiduciary

duty." *LeBanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 7 n.4 (1st Cir. 1999) (citations omitted).  We conclude that a trustee is not required to obtain prior court approval in order to invoke quasi-judicial immunity from suit by a third party for actions taken by the trustee on behalf of the estate and within the scope of his authority.  That brings us to GKH's contention that the Trustee acted outside the scope of his authority so as to defeat quasi-judicial immunity.

### 2.    *Ultra Vires* **Exception**

Whether a bankruptcy trustee's actions were *ultra vires* is a question that courts most often addressed in the related context of determining whether jurisdiction is restricted to the bankruptcy court under the common-law *Barton* doctrine.  *See Heavrin*, 519 F.3d at 578 (citing *Barton,* 104 U.S. at 127).  Under the *Barton* rule, leave of the bankruptcy court "must be obtained by any party wishing to institute an action in [another] forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court."  *Allard*, 991 F.2d at 1240 (discussing *Barton*); *see also Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012) (listing cases applying *Barton*).  In other words, the question in such cases is whether the trustee was acting in his official capacity and within the scope of his authority.

In *Heavrin*, for example, we held that the bankruptcy court had properly exercised jurisdiction over a claim brought against the Chapter 7 trustee alleging intentional infliction of emotional distress resulting from the trustee's threat to refer the debtor's former general counsel for criminal investigation unless he entered into a settlement for the benefit of the bankruptcy estate.  519 F.3d at 578.  This court explained, in part, that the trustee had acted within his authority because the negotiations pertained to an effort to recover assets for the estate.  *Id*.  In determining whether actions were taken within the trustee's authority, this court has adopted a presumption that actions taken in a trustee's official capacity "'were a part of the trustee's duties'" unless facts demonstrating otherwise were alleged at the outset.  *Lowenbraun*, 453 F.3d at 322 (quoting *In re Heinsohn*, 247 B.R. at 246).

"The situation in which trustees have been most commonly found to have acted outside of their authority is in seizing property which is found not to be property of the estate." *Schechter*, 182 B.R. at 217 (citations omitted); *see Barton*, 104 U.S. at 134 (stating "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting *ultra vires*"). In fact, thus far, courts have only applied the *ultra vires* exception to the actual wrongful seizure of property by a trustee or receiver. GKH urges this court to find the Trustee's actions here were similarly *ultra vires* because the Trustee's lawsuits were filed in an *attempt* to seize property that was not an asset of the estate. This analogy falls short for reasons that are apparent from the cases that GKH itself relies upon.

For example, in *Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145 (10th Cir. 2009), the court-appointed receiver in a divorce action wrongfully seized the assets of Teton Millwork, a corporation in which the husband was only a 25% shareholder. GKH emphasizes that *Teton* involved assets of a corporate entity in which the husband-debtor had only a partial interest. However, the court in *Teton* made clear that it was the wrongful physical seizure of corporate assets that caused the receiver's action to come within the *ultra vires* exception. *Id*. at 148. In fact, the Tenth Circuit has since distinguished *Teton* from claims for retaliatory mismanagement of the estate by the trustee specifically because the debtor did not allege that the trustee had wrongfully seized the assets of another. *Satterfield*, 700 F.3d at 1235-36. Relying on this court's decisions in *Heavrin* and *Lowenbraun*, the court in *Satterfield* adopted a broad interpretation of *Barton* and held that "claims based on acts that are related to the official duties of the trustee are barred by the *Barton* doctrine even if the debtor alleges such acts were taken with improper motives." *Id*. at 1236.

Similarly, in *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967), the court held that "a trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of [the bankruptcy] court." The court in *Leonard*, often cited for the *ultra vires*

exception, specifically identified the trustee's *ultra vires* acts as the wrongful physical seizure and continued possession of property that was not an asset of the bankruptcy estate. The court also explained, however, that the proper course of action would have been for the trustee to go to court and obtain a turnover order directing the delivery of the property that was an asset of the bankruptcy estate. *Id*. at 560-61. Here, the Trustee did just what *Leonard* advises trustees to do by filing the adversary actions to determine the rights and interest of the estate. *Schechter*, 182 B.R. at 217-18 ("Since the bankruptcy laws do not permit trustees, on their own authority, to seize estate property in the possession of a nondebtor, they are personally liable for seizing such property that does not actually belong to the debtor."). Thus, GKH's reliance on these cases is misplaced.

### B.    Scope of Authority

Finally, GKH insists that the Trustee exceeded the scope of his authority here because, in essence, the complaints were so frivolous and meritless that the actions taken in filing and pursuing the adversary proceedings were *ultra vires*. It is important to keep clear that the issue is whether the acts were within the scope of the trustee's official duties—not whether they were meritless, without foundation, or brought for ulterior purposes.

A trustee, as the representative of the bankruptcy estate with the statutory "capacity to sue and be sued," is authorized to commence and prosecute an action on behalf of the estate with or without court approval. 11 U.S.C. § 323; *see also* FED. R. BANKR. P. 6009. Further, a Chapter 7 trustee is obligated to, among other things, "collect and reduce to money the property of the estate for which such trustee serves," "investigate the financial affairs of the debtor," and, "if a purpose would be served, examine proofs of claims and object to the allowances of any claim that is improper." 11 U.S.C. § 704(a)(1), (4)-(5). In short, a bankruptcy trustee is appointed to "take charge of the debtor's estate, collect assets, bring suit on the debtor's claims against other persons, defend actions against the estate, and otherwise administer the estate." *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 801 (E.D. Tenn. 1998). There can

be little doubt that a Chapter 7 trustee's filing of an adversary proceeding against a third party on behalf of the bankruptcy estate is a function generally performed in his official capacity and within the scope of his authority.  As we explain below, GKH did not allege facts in either adversary proceeding demonstrating that the Trustee exceeded the scope of that authority.[6]

### 1.    Complaint Based on Avoidance Action (No. 12-5874)

GKH maintained that the Trustee's Avoidance Action was filed (and not voluntarily dismissed) either (1) without conducting the most basic research on the threshold issue of whether the 50-acre parcel belonged to the debtor or the bankruptcy estate; or (2) in willful disregard of the law in an effort to extort a settlement from GKH unrelated to the merits or for ulterior purposes.  GKH attached to its complaint copies of the Avoidance Action, the order of dismissal, and the transcript reflecting Judge Cook's ruling that the Trustee could not establish any of his claims because the property in question did not belong to the debtor or the bankruptcy estate.  Review of the record demonstrates that the bankruptcy court neither erred nor impermissibly weighed the evidence in finding that the Trustee's actions were taken in his official capacity and within the scope of his authority.

In dismissing GKH's complaint as barred by quasi-judicial immunity, the bankruptcy court explained:

> Here, by filing the Trustee's [Avoidance Action] Complaint, the Defendants sought to pursue a claim relating to collecting property of the bankruptcy estate and investigating the financial affairs of the Debtor, two of the Trustee's essential duties outlined in 11 U.S.C. § 704(a). The Defendants sought to avoid the 50 Acre Transfer because it appeared substantially to diminish the value of the Debtor's membership interest,

---

[6]GKH asserts in reply that the Trustee was without any authority to act because no "order of appointment" was filed in the Chapter 7 proceeding until December 27, 2012.  Not only has GKH acknowledged that Still continued as Trustee after the conversion to Chapter 7, but the record showed that the creditors received notice that Still would continue as interim Chapter 7 Trustee.  Moreover, as the bankruptcy court explained, the United States Trustee actually makes an appointment of an interim Chapter 7 Trustee. *GKH v. LeRoy*, 2011 WL 4600407, at *1, n.2.  In fact, the document GKH relies upon was the United States Trustee's Notice of Appointment stating that Still was appointed interim Chapter 7 Trustee "as of June 14, 2010."  (No. 08-bk-16378, Doc. 1800.)  GKH offered no authority to suggest that failure to file that notice earlier deprived Still of the authority to act as Chapter 7 Trustee.

and consequently the value of the estate. The Trustee and his counsel
were not engaged in conducting business of the estate that required the
use of business judgment that would benefit from a court order
authorizing them to proceed with a particular business strategy.

*GKH v. Banks*, 2011 WL 3585622, at *13. The bankruptcy court also explained that the
dismissal for failure to state a claim would not alone establish a lack of probable cause,
and that the circumstances of the transaction here could have led the Trustee to
reasonably suspect a fraudulent conveyance. *Id*. at *14-15 (discussing *Matter of Linton*,
136 F.3d 544, 545-47 (7th Cir. 1998)).

It was in comparing this case to *Linton*, that GKH argues the bankruptcy court
made impermissible factual findings or failed to draw all reasonable inferences in its
favor. Specifically, GKH points to the following highlighted reasoning:

As *In the Matter of Linton*, in this action, the facts as alleged in
the Trustee's Complaint, may have caused a light bulb to flash in the
Trustee's mind regarding devaluation of the Debtor's estate. As
explained, *supra*, the Trustee has the duty and obligation to collect assets
of the estate. *See* 11 U.S.C. § 704(a)(1). The December 10, 2008 50
Acre Transfer may have decreased the value of the Debtor's estate. Such
a diminishment of the estate, coupled with allegations of questionable
conduct by individuals owing a fiduciary duty to the Debtor may have
caused the Defendants to consider their obligation to maximize the value
of the estate. *Otherwise, the Defendants may have been accused by
creditors of being derelict in their duties. Although, as Judge Cook held,
the 50 Acre transfer did not directly involve property of the estate, it may
have served to impact the estate negatively during the gap period
between the filing of the involuntary bankruptcy petition and the
voluntary bankruptcy petition.*

*Id*. at *15 (emphasis added). This reasoning does not represent a failure to accept
GKH's factual allegations as true, but involves the legal conclusion that a decision to
pursue an action with respect to the 50-Acre Transfer would not be without any
reasonable basis. In further support of that conclusion, the bankruptcy court identified
other court decisions that considered whether post-petition transfers of property that did
not belong to the estate, but reduced the value of the estate, could violate the automatic
stay provisions. *Id*. at *15-16 (discussing cases). It is immaterial whether a

diminishment theory would have succeeded, as the question (again) is whether the Trustee was acting outside the scope of his authority in seeking to avoid the challenged transfer.

Nor did the bankruptcy court's statements regarding the policy reasons for recognizing quasi-judicial immunity represent a failure to adhere to the standards for evaluating motions to dismiss. The bankruptcy court emphasized: (1) that immunity should apply "'even if, in hindsight, such interpretations of law were incorrect'"; (2) that leeway is appropriate so that trustees "need not 'fear they could be held liable for every discretionary decision'"; and (3) that denying immunity would discourage the filing of adversary proceedings "when an adversary proceeding is precisely the manner in which the Bankruptcy Code seeks to have such questions as whether the debtor transferred property of the estate addressed." *Id*. at \*16-17 (quoting *Picard v. Chais et al. (In re Bernard Madoff Inv. Secs, LLC)*, 440 B.R. 282, 292 (Bankr. S.D.N.Y. 2010)). Also, the bankruptcy court has "other ways of sanctioning wayward trustees." *Id*. at \*17 (citing FED. R. BANKR. P. 9011(c)). The bankruptcy court did not err in considering these policy reasons in refusing to punish the defendants for seeking to maximize the assets of the estate when the circumstances surrounding the 50-Acre Transfer were bound to result in "'light bulbs' flashing through their heads." *Id*. at \*16. Further, GKH's argument that the bankruptcy court erred by failing to weigh the burden to third parties who must defend such meritless litigation misses the point of absolute immunity. A trustee sued by third parties for actions taken in his official capacity on behalf of the estate and within the scope of the authority granted by statute or court order, is entitled to quasi-judicial immunity.

Finally, the bankruptcy court concluded that "subjecting the Defendants to discovery in this proceeding will serve as a distraction during the ongoing main bankruptcy matter and may preclude them from fully focusing on their duties relating to administration of the Debtor's estate." *Id*. at \*17 (citing *Matter of Linton*, 136 F.3d at 545). Despite GKH's assertion to the contrary, that was not an impermissible fact

finding but the statement of a policy reason for recognizing immunity as early as it may be established.

The bankruptcy court did not err in finding as a matter of law that the Trustee and his attorneys are entitled to quasi-judicial immunity from GKH's claims of malicious prosecution and abuse of process for bringing the Avoidance Action.  The function, filing suit on behalf of the estate in seeking to avoid a potentially fraudulent transfer, is authorized by statute, and exposure to potential liability for doing so would have a negative effect on the appropriate exercise of that function.  *Heinsohn*, 231 B.R. at 62 (quoting *Forrester*, 484 U.S. at 224)).

**2.      Complaint Based on Turnover Action (No. 12-5876)**

GKH similarly alleged malicious prosecution and abuse of process by the Trustee in filing and pursuing the Turnover Action either (1) without having conducted the most basic research regarding whether the records and documents in GKH's possession were property of the estate, or (2) in willful disregard of the law and for ulterior purposes. The numerous exhibits attached to GKH's complaint included the complaint in the Turnover Action, emails and correspondence between counsel, and several transcripts relating to the turnover issue.  There can be no doubt that the exhibits GKH attached to and referenced in its complaint were properly considered in deciding the motions to dismiss. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

Briefly, those records showed that GKH conveyed its position to be:  (1) that the Debtor should already have duplicates of any records being sought; (2) that records of entities in which the Debtor was a member (but not 100% owner) were not property of the estate; and (3) that GKH was willing to make such records available for inspection and copying (but not turnover). Despite the Trustee's demands, GKH continued to resist the turnover of documents belonging to entities in which the Debtor had only a partial interest, questioned the Trustee on the issue during his deposition, and represented at the pretrial conference that the only issue in dispute was whether those records were property of the estate.  The day after the conference, an agreed protective order was stipulated to and the Trustee agreed to voluntarily dismiss the Turnover Action without

prejudice. That dismissal came approximately three months after the action was filed, and more than a month prior to Judge Cook's ruling that the 50-Acre Transfer did not involve property of the debtor or the debtor's estate.

A trustee's duties include investigating the financial affairs of the debtor, 11 U.S.C. § 704(a)(4), and a trustee has statutory authority to bring a turnover action in order to determine whether certain property belongs to the bankruptcy estate, 11 U.S.C. § 542. *See GKH v. LeRoy*, 2011 WL 4600407, at *6 (citing *In re Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) ("the determination of whether certain property belongs to the estate should not be made outside of a specific controversy, such as a turnover action")). In this case, the bankruptcy court found that:

> GKH's exhibits indicate that the parties were engaged in a legal debate regarding whether GKH's records pertaining to the Debtor's membership interests in several LLCs constituted property of the estate. The Trustee felt that he needed a court order to compel turnover of what he contended was property of the estate; therefore, a turnover adversary proceeding was the natural way to proceed pursuant to Fed. R. Bankr. P. 7001(1).

*Id.* at *6. It was not error to conclude that the Trustee acted within his authority by bringing the action to secure a determination as to what records constituted property of the Debtor or the bankruptcy estate.

Even if that were not the case, 11 U.S.C. § 542(e) provides that "the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, *relating to the debtor's property or financial affairs*, to turn over or disclose such recorded information to the trustee." (Emphasis added.) That is, an action for turnover under § 542(e) does not require that the information be property of the estate. *GKH v. Leroy*, 2011 WL 4600407, at *6-7 (quoting *Am. Metrocomm Corp. v. Duane Morris & Heckscher LLP (In re Am. Metrocomm Corp.)*, 274 B.R. 641, 652 (Bankr. D. Del. 2002)). Without denying that the Trustee could have relied on § 542(e), GKH argued that the Turnover Action sought relief only under § 542(a) and not under § 542(e).

Under Fed. R. Civ. P. 8, made applicable by Fed. R. Bankr. P. 7008, only a short and plain statement of a claim is required.  The Turnover Action itself alleged that the Debtor "owned or controlled several entities which were created by the attorneys at [GKH]," and that GKH "maintains and controls the files, records and documents related to the entities, which also constitutes property of the Debtor . . . or the estate under 11 U.S.C. § 541."  Indeed, the Trustee sought to compel GKH to "turnover all records of the Debtor, including, but not limited to, those listed on Exhibit A," and alleged that

> he is entitled to immediate turnover of these files and records *pursuant to 11 U.S.C. § 542.  Additionally*, [the Trustee] alleges he is entitled to records or a copy of any records *related to funds or property of the Debtor* that may have been deposited or transferred through any trust or escrow account of [GKH].

(Emphasis added.)  It was not error for the bankruptcy court to recognize that § 542(e) authorized the relief sought.

Further, as the bankruptcy court also found, "the Trustee was not entirely unsuccessful in [his] efforts to obtain some property of the estate by filing the Turnover Complaint."  *GKH v. LeRoy*, 2011 WL 4600407, at *18.  Specifically, correspondence attached to another pleading in the main bankruptcy case confirmed that shortly before the voluntary dismissal, GKH agreed to turn over personal records belonging to the Debtor as well as records pertaining to entities that were owned 100% by the Debtor.  *Id.*  As such, the Trustee was "successful in obtaining at least a subset of the records they had previously requested without success."  *Id.*  Moreover, as the record also established, a "highly detailed" agreed protective order was also entered governing the use and disclosure of records obtained from GKH.  *Id.*

Taking the factual allegations as true and drawing all reasonable inferences in favor of GKH, the bankruptcy court did not err in finding as a matter of law that the Trustee's actions in filing and pursuing the Turnover Action against the Debtor's law firm were taken in his official capacity on behalf of the bankruptcy estate and within the scope of his statutory duties to investigate, collect assets and property of the estate, and seek turnover of materials relating to the Debtor's financial affairs and interests.

**C.  Conclusion**

The essence of GKH's contention that the Trustee acted *ultra vires* or outside the scope of his authority is that the Trustee acted improperly or even wrongfully in filing the Avoidance and Turnover Actions without a reasonable legal basis.  However, a showing that the Trustee's actions were wrongful or improper "does not equate to a transgression of his authority."  *Cutright*, 2012 WL 1945703, at *8; *see also McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (holding *Barton* applied to claims that counsel for the trustee sought court orders to obtain irrelevant personal income tax records because the actions even if wrongful were taken in the context of attempting to prove the adversary action); *Satterfield*, 700 F.3d at 1236 (refusing to recognize a general tort exception to the *Barton* doctrine).  The bankruptcy court did not err in dismissing GKH's two adversary proceedings on grounds that the Trustee and his attorneys were entitled to quasi-judicial immunity from suit.

**IV.**

GKH's remaining appeal is from the denial of leave to sue the Trustee and his attorneys in state court for malicious prosecution and abuse of process for filing and pursuing the Bradley County Complaint.  GKH argues:  (1) that *Barton* did not apply because the Trustee's actions were *ultra vires*; (2) that, even if the Trustee acted within the scope of his authority, leave should nonetheless have been granted in light of the factors identified in *Kashani*; and (3) that the motion to alter or amend should have been granted on account of GKH's late decision to also assert claims against McKenzie over which the bankruptcy court would not have jurisdiction.  Before turning to these arguments, the first question to resolve is whether this appeal is moot.

**A.  Mootness**

Without waiting for a decision on its motion for leave to sue in state court, GKH filed its third complaint—which included claims against the Debtor—in both state court (from which it was removed) and bankruptcy court (where the cases were consolidated).  Although currently on appeal in the district court, Judge Rucker has entered orders in the

consolidated action:  (1) dismissing the claims against the Trustee and his attorneys on the grounds of quasi-judicial immunity; (2) abstaining and remanding to state court the claims against the Debtor and counsel (to the extent that they represented the Debtor); and (3) declaring GKH in contempt for filing its third complaint in state court without first obtaining leave to do so.  *See In re McKenzie*, 471 B.R. 884 (Bankr. E.D. Tenn. Mar. 30, 2012) (abstention and remand); *In re McKenzie*, 472 B.R. 455 (Bankr. E.D. Tenn. Mar. 30, 2012) (dismissing claims against Trustee); *In re McKenzie*, No. 08-16378, 2012 WL 1115981 (Bankr. E.D. Tenn. Mar. 30, 2012) (contempt).  The Trustee asserts (without development or citation to any authority) that the dismissal of GKH's claims on the merits makes this appeal moot because *res judicata* would bar relitigation of those claims if we were to remand.

"The 'case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.'"  *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (citation omitted); *see also Alvarez v. Smith*, 558 U.S. 87, 92 (2009).  A suit "'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'"  *Chafin*, 133 S. Ct. at 1023 (citation omitted).  However, to say a claim is barred by *res judicata* is to say it is without merit, and the Court in *Chafin* cautioned that care must be taken not to confuse mootness with the merits.  *Chafin*, 133 S. Ct. at 1023.  Absent a showing that the relief sought would make no difference to the legal interests of the parties, we cannot conclude that the appeal should be dismissed as moot.  *See McPherson v. Mich. High Sch. Athletics Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997).

**B.        Denial of Leave to Sue in State Court**

The *Barton* doctrine requires that, apart from a narrow exception not at issue here, permission must be obtained before bringing suit against the trustee in another forum "for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court."  *Allard*, 991 F.2d at 1240.  There can be no doubt that the limited exception under 28 U.S.C. § 959(a) for suits against trustees for actions taken in

"carrying on business" does not apply here.  *Id.* at 1241; *Satterfield*, 700 F.3d at 1237-38; *Muratore v. Darr*, 375 F.3d 140, 144-45 (1st Cir. 2004).[7]

### 1.      *Ultra Vires* **Exception**

Rather, GKH maintains that *Barton* does not apply (and leave should not have been required) because the Trustee exceeded the scope of his authority.  To the extent that GKH again argues that the Trustee's actions were equivalent to the physical seizure of property found to be *ultra vires* in *Leonard* and *Teton Millworks*, that claim is even less persuasive in this case as the claims asserted in the Bradley County Complaint sought actual and punitive damages against GKH for its alleged breach of fiduciary duty in representing the Debtor in connection with the 50-Acre Transfer.  Because the Trustee's actions cannot be equated to a trustee's physical seizure of property not belonging to the estate, reliance on those cases is misplaced.

GKH also makes the now familiar argument that the Trustee exceeded his authority because he knew or should have known that the 50-Acre Transfer did not involve property of the bankruptcy estate either before filing suit or at least when Judge Cook so ruled in December 2010.  GKH also argues that the Trustee knew that the claims would be found to be time barred, but a successful statute-of-limitations defense would not cause the Trustee's pursuit of the claims to fall outside the scope of his authority.  Neither a dismissal on the merits, nor an allegation that the claims were brought for ulterior purposes, equates to a transgression of the authority to assert claims to property on behalf of the estate.  *See Cutright*, 2012 WL 1945703, at *8; *McDaniel*, 668 F.3d at 157;  *Satterfield*, 700 F.3d at 1236-37; *Muratore*, 375 F.3d at 144 (rejecting expanded exception to *Barton* doctrine for torts committed by the trustee).

The bankruptcy trustee has authority, as the representative of the estate, to commence and prosecute any action or proceeding on behalf of the estate with or without court approval under 11 U.S.C. § 323(a) and Fed. Bankr. R. P. 6009.  *See In re*

---

[7] 28 U.S.C. § 959(a) provides, in pertinent part, that:  "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property."

*McKenzie*, 2011 WL 3439081 at *10 (citing *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 n.6 (3d Cir. 1989)).  Moreover, the bankruptcy estate includes not only "all legal or equitable interests of the debtor," 11 U.S.C. § 541(a)(1), but also causes of action arising after commencement of the bankruptcy case.  *Id.* at *10 (citing cases).  Consistent with this authority, the Trustee's actions in filing and pursuing the Bradley County Complaint were taken in pursuit of possible assets of the estate and fell within the broad scope of the Trustee's duties and obligations under 11 U.S.C. §  704.  *Id.* at *8; *see also id.* at *11.  GKH has not demonstrated that the Trustee acted outside the scope of his authority so as to obviate the need to seek permission to file its third complaint in state court.

### 2.      Exercise of Discretion

We review the bankruptcy court's decision whether to grant leave to sue the trustee in state court for abuse of discretion.  *Matter of Linton*, 136 F.3d at 546; *see also Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 886 (BAP 9th Cir. 1995).  Although this court has not yet endorsed any particular considerations to be taken into account, the bankruptcy court looked to the analysis articulated in *Kashani* for guidance.  *In re McKenzie*, 2011 WL 3439081, at * 9-12.  Other courts also have relied on *Kashani* in varying degrees.  *Compare Beck v. Fort James Corp. (In re Crown Vantage)*, 421 F.3d 963, 976-77 (9th Cir. 2005); *In re VistaCare Group, LLC*, 678 F.3d 218, 232-33 (3d Cir. 2012); *Cutright*, 2012 WL 1945703, at *10-11; *Strand v. Loveridge*, No. 2:07-cv-576, 2008 WL 893004, at *3-4 (D. Utah Mar. 28, 2008); *In re Eerie World Ent., LLC*, 2006 WL 1288578 (Bankr. S.D.N.Y. Apr. 28, 2006).

### a.      *Prima Facie* Case

GKH devotes a substantial portion of its opening brief to the argument that it alleged sufficient facts to establish a *prima facie* case of malicious prosecution and abuse of process, but acknowledges that no findings were made by the bankruptcy court in that regard.  The court in *Kashani* explained that, even when a *prima facie* case has been alleged against the trustee, the bankruptcy court may nonetheless conclude that the suit

would be more properly maintained in bankruptcy court.  *In re Kashani*, 190 B.R. at 886.

Here, the bankruptcy court acknowledged GKH's arguments, assumed that a *prima facie*

showing could be made, and relied on the extensive record submitted in support of the

motion for leave in analyzing the other *Kashani* factors.  *In re McKenzie*, 2011 WL

3439081, at *14.  Since the decision rested on other considerations, we also assume

without deciding that GKH's subsequently filed complaint alleged a *prima facie* case of

malicious prosecution or abuse of process in connection with the Bradley County

Complaint.

### b.   *Kashani* Factors

Five questions were identified in *Kashani* as being relevant to whether the

bankruptcy court should retain jurisdiction:

> 1.     Whether the acts or transactions relate to the carrying on of the business connected with the property of the bankruptcy estate.  If the proceeding is under 28 U.S.C. § 959(a), then no court approval is necessary. . . .
>
> 2.     If approval from the appointing court appears necessary, do the claims pertain to actions of the trustee while administering the estate?  By asking this question, the court may determine whether the proceeding is a core proceeding or a proceeding which is related to a case or proceeding under Title 11. . . .
>
> 3.     Do the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity?
>
> 4.     Are the movants or proposed plaintiffs seeking to surcharge the trustee; that is, seeking a judgment against the trustee personally?
>
> 5.     Do the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct?

*Kashani*, 190 B.R. at 886-87.  The existence of "one or more of these factors may be a

basis for the bankruptcy court to retain jurisdiction over the claims."  *Id*. at 887; *see also*

*In re Crown Vantage*, 421 F.3d at 976 (discussing *Kashani*).  Here, the bankruptcy court

addressed each factor and found that they militated in favor of retaining jurisdiction.

Without repeating those findings, we are satisfied that GKH has not established an abuse of discretion in the bankruptcy court's denial of its motion for leave to sue in state court. GKH's arguments to the contrary are briefly addressed.

*First.* As already discussed, the § 959(a) exception to the *Barton* doctrine does not apply. GKH misapprehends this factor by focusing on Judge Cook's ruling that the 50-acre parcel was not property of the bankruptcy estate.

*Second.* As discussed above, the bankruptcy court did not err in finding that the Trustee's actions in filing and pursuing the Bradley County Complaint were taken within the scope of his authority to administer the bankruptcy estate. Nor is it relevant that the Trustee filed his "non-core" claims in state court. As the bankruptcy court explained:

> The categorization of an action as "core" or "non core" for purposes of bankruptcy court jurisdiction may be determinative of what forum the trustee must use to obtain jurisdiction over the party from whom he is seeking the recovery. It is not determinative of whether the filing of that suit is inside or outside the scope of the trustee's duties.

*In re McKenzie*, 2011 WL 3439081, at *9. The bankruptcy court did not err in finding that this factor weighed in favor of retaining jurisdiction. Further, as is discussed below, the late addition of claims against the Debtor and the attorneys (to the extent that they represented him) did not require a different result.

*Third and Fourth.* GKH contends that the need for bankruptcy court oversight may be less when the claims against the trustee are personal capacity claims that do not implicate the bankruptcy estate directly. That is not the case, however, when the trustee is entitled to immunity. Here, the bankruptcy court observed that similar questions of the Trustee's immunity were already being considered in GKH's related adversary proceedings. It was not an abuse of discretion to conclude that because there was a strong possibility that the Trustee would be entitled to immunity in this case, these factors weighed in favor of retaining jurisdiction over the claims against the Trustee. Indeed, the bankruptcy court has since dismissed the claims against the Trustee and his attorneys on the grounds of quasi-judicial immunity.

*Fifth.* The bankruptcy court acknowledged that GKH's claims did not allege breach of any fiduciary duty owed to it as a creditor, but found that GKH's tort claims were better suited to be heard in bankruptcy court both because the claims were "intertwined with the Trustee's duties pursuant to 11 U.S.C. § 704" and because GKH was already pursuing a similar adversary proceeding based on the same operative facts. *Id.* at *12. We have already rejected GKH's argument that the Trustee exceeded the scope of his authority under § 704.

### c.       Policy Considerations

Finally, the bankruptcy court identified several policy reasons supporting the decision to deny the motion and recognized that the decision "should include the balancing of the interests of all parties involved." *Kashani*, 190 B.R. at 886. Briefly, those reasons included the determination that "resolution of GKH's tort claims may have an impact on the administration of the estate since [the Bradley County Complaint] related directly to the Trustee's attempts to administer that estate through its powers of investigation and its duty to collect assets of the estate." *In re McKenzie*, 2011 WL 3439081, at *12. Further, "'[t]he leave-to-sue requirement also protects trustees from excessive interference in the execution of their duties resulting from [the] need to defend themselves in lawsuits filed by parties upset by their treatment in the trustee's bankruptcy proceeding[.]'" *Id.* at *13 (quoting *In re Kids Creek Partners*, 248 B.R. 554, 559 (Bankr. N.D. Ill. 2000)).

Further, the bankruptcy court expressed concern that granting leave to do so in another court could distract from the ongoing bankruptcy case. More importantly, however, granting leave could result in a tremendous waste of judicial resources given the similarity to the related adversary proceeding, the bankruptcy court's familiarity with the underlying and related litigation, and the burden that this "highly complicated and heavily litigated matter" could present to the state court. *Id.* at *14. Although GKH disputes that the matter is particularly complex and argues that leave should be granted because the Trustee's underlying lawsuit was filed in state court, there can be no question that the issues of immunity and the scope of the trustee's authority are better

adjudicated in bankruptcy court. Finally, GKH contends that the bankruptcy court failed to equally consider its interests in pursuing claims for having been subjected to unnecessary and legally unsupportable lawsuits.  However, GKH has been able to litigate the claims asserted in its third complaint—just not in state court.  We find no abuse of discretion in denying the motion for leave to file this action in state court.

## C.        Motion to Alter or Amend

GKH filed a motion to alter, amend, or set aside the order denying leave to sue the Trustee in state court pursuant to Fed. R. Bankr. P. 9023 and 9024 (incorporating Fed. R. Civ. P. 59(e) and 60(b)).  GKH explained that it sought relief on the grounds that it had come to believe that the Debtor was an indispensable party whose addition to the suit would create serious jurisdictional problems for the bankruptcy court.  Although not expressly articulated, GKH's argument seems to be that because the claims against the Debtor could not be heard in bankruptcy court, leave should have been granted so that claims against the Trustee, the Debtor, and their attorneys could be litigated in a single action.

As the bankruptcy court concluded, Debtor's involvement in the underlying lawsuit was not newly discovered evidence; GKH's attempt to relitigate its motion for leave under a new theory was not a proper basis for reconsideration; and no attempt was made to establish other grounds for reconsideration under Rule 59(e) or relief from judgment under Rule 60(b).  The bankruptcy court did not abuse its discretion in finding that this was not a proper basis for relief.  *Hamerly v. Fifth Third Mortg. Co. (In re J&M Salupo Dev. Co.)*, 388 B.R. 795, 801, 805 (BAP 6th Cir. 2008).

Moreover, any error would be harmless because the bankruptcy court recognized that the same arguments had been made in GKH's pending motion to remand these same claims to state court.  The question of whether the Debtor was an indispensable party and the impact that the addition of the Debtor would have on the bankruptcy court's jurisdiction was reserved for decision in GKH's actual adversary proceeding.  Those issues have been decided, are on appeal before the district court, and will not be considered in this appeal.

**V.**

The district court's decision affirming the bankruptcy court's orders in these consolidated appeals is **AFFIRMED**.