PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3366

_____

IN RE: J & S PROPERTIES, LLC,

Debtor

PHOENICIAN MEDITERRANEAN VILLA, LLC,

Appellant

v.

LISA M. SWOPE, Esquire, Trustee of the Bankruptcy Estate
of J & S Properties, LLC; JAMES FOCHT; J & S
PROPERTIES, LLC

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3-15-cv-00268)
District Judge: Honorable Kim R. Gibson

_____

Argued May 23, 2017
Before: HARDIMAN, ROTH, and FISHER, *Circuit Judges*.

(Filed: September 28, 2017)

Mary B. Sheats [Argued]
Frank Gale Bails Murcko & Pocrass
707 Grant Street
Suite 3300, Gulf Tower
Pittsburgh, PA 15219
        *Attorney for Plaintiff–Appellant*

Robert L. Byer
Duane Morris
600 Grant Street
Suite 5010
Pittsburgh, PA 15219

Andrew R. Sperl [Argued]
Duane Morris
30 South 17th Street
United Plaza
Philadelphia, PA 19103
        *Attorneys for Defendant–Appellee*

Harry J. Giacometti
Flaster Greenberg
1835 Market Street
Suite 1050
Philadelphia, PA 19103

Gary F. Seitz
Gellert Scali Busenkell & Brown
601 Walnut Street
Curtis Center, Suite 280 South
Philadelphia, PA 19106

*Attorneys for Amicus–Appellee National Association of Bankruptcy Trustees*

William G. Schwab
811 Blakeslee Boulevard Drive East
P.O. Box 56
Leighton, PA 18235
*Attorneys for Amicus–Appellee Third Circuit Bankruptcy Trustees*

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

A bankruptcy trustee sometimes must act quickly to safeguard property of the estate. In this case, Chapter 7 Trustee Lisa Swope took control of a commercial leasehold possessed by Phoenician Mediterranean Villa, LLC in a building owned by the debtor. Phoenician requested equitable relief to regain possession of its leasehold, claiming that Swope violated the law when she accepted the key to locks that had been changed. The United States Bankruptcy Court for the Western District of Pennsylvania denied the relief sought by Phoenician, holding that Swope was qualifiedly immune from suit. The District Court affirmed and Phoenician filed this appeal.

The question presented is whether qualified immunity applies to discretionary actions taken by a trustee to preserve the bankruptcy estate's assets, and whether that immunity protects Trustee Swope's conduct in this case. We will affirm because Swope exercised reasonable care under the circumstances and did not violate clearly established law.

I

J & S Properties, LLC filed a Chapter 7 petition in the Bankruptcy Court on July 10, 2013. Attorney Lisa Swope was appointed as Chapter 7 Trustee of the estate. The estate's largest asset was a building located in Altoona, Pennsylvania, in which Phoenician was a lessee and previously operated a restaurant. *In re J & S Props., LLC*, 545 B.R. 91, 94 (Bankr. W.D. Pa. 2015). Pursuant to a court order dated November 5, 2013, Swope rejected Phoenician's lease to facilitate a sale of the property. Although Phoenician was not operating the restaurant at that time, its tenancy had not expired. After the lease was rejected, Phoenician attempted to remove personal property from the restaurant, but Swope objected because the Bankruptcy Court had not determined ownership of the contents of the restaurant, although Phoenician claimed to own all of it.

After learning from J & S's principal, James Focht, that the restaurant had been shut down, that Phoenician had cancelled its insurance on the premises, and that heating the property could be an issue with an "anticipated arctic blast," Swope met at the property with Phoenician's principal, Husam Obeid, along with his counsel and a contractor on January 3, 2014. *Id.* At that meeting, Obeid gave Swope a key to the premises and the contractor recommended that the thermostat be set to at least "sixty degrees Fahrenheit to

4

prevent the pipes from freezing." *Phoenician Mediterranean Villa, LLC v. Swope*, 554 B.R. 747, 750–51 (W.D. Pa. 2016). Unfortunately, Obeid did not heed this advice, the pipes burst, and the property was flooded on January 13, 2014. Obeid contacted a disaster restoration company, but they apparently refused to work on the property "because there were problems with insurance coverage, the relationship between the parties was acrimonious, and no one agreed to provide the company with a lien." *Id.* at 751. According to Trustee Swope, Obeid and Focht "did not trust each other" and had previously tried to hurt each other's businesses. *Id.* at 750. It was in this context that Swope set about to protect, or "adequately preserve[]," the largest asset of the bankruptcy estate. *Id.*

Swope asked for another meeting on January 15, 2014 to assess the damage to the property and discuss the status of the building's insurance. Obeid and his counsel did not show up, asking that the meeting be rescheduled and held without Focht; Swope declined the request "[g]iven the urgent nature of the situation." *In re J & S Props.*, 545 B.R. at 95. Swope tried to inspect the premises but discovered the key Obeid had given her did not open the locked interior door to the building.[1] Focht then "had the locks changed and provided Trustee Swope with the key" on January 16. *Phoenician Mediterranean Villa*, 554 B.R. at 751. Swope claimed in an email to Phoenician that in accepting control of the building, she was attempting to preserve the assets to the best of her

---

[1] The Bankruptcy Court noted that "the Lease Agreement [between Phoenician and J & S] provides that Phoenician was required to provide the lessor with access to the premises so that it could be inspected and/or repaired." *In re J & S Props.*, 545 B.R. at 108 n.8. As such, Phoenician likely violated its lease. *Id.*

5

ability. On the same day, Swope filed an emergency motion asking the Bankruptcy Court to grant her immediate possession of the property and its contents. In the meantime, she retained the "sole key" and thus control of the premises, and subsequently provided both parties with only "supervised access" to the property. *Id.*

Phoenician filed a complaint in equity to "regain possession of the premises," and the Bankruptcy Court conducted an emergency hearing on January 24, 2014. Phoenician Br. 12.[2] After the hearing, at which Swope testified, the Court denied Phoenician's requests for an injunction and temporary restraining order on January 27. During the hearing, the Bankruptcy Court noted that "the trustee has possession, custody and control of the property," and opined that Swope is "protected by the automatic stay," which precludes Phoenician from interfering with the property in any way. App. 399. And on February 7, 2014, the Bankruptcy Court ordered that Phoenician and J & S and their associates "are prohibited from entering into or upon the [Estate] Property without the express authorization of the Trustee, or further order from this Court." Order of Court Granting First Commonwealth Bank Relief from Stay (hereinafter "Feb. 7, 2014 Order"), Bankruptcy No. 13-70512-JAD, ECF No. 113, at ¶¶ 7–8 (Bankr. W.D. Pa. Feb. 7, 2014).

---

[2] The parties dispute whether Phoenician ever asked for and was denied access to the building between January 16 (when the locks were changed) and January 24 (when the emergency hearing was held). The Bankruptcy Court found that resolution of the immunity issue did not require a resolution of this dispute, and so assumed that Phoenician had been denied access. *See In re J & S Props.*, 545 B.R. at 95.

In its complaint, Phoenician also sued Swope under 42 U.S.C. § 1983 for wrongful eviction, claiming violations of its Fourth and Fourteenth Amendment rights. Swope moved to dismiss this suit based on quasi-judicial immunity. On September 30, 2015, the Bankruptcy Court granted Swope's motion to dismiss the complaint against her, though because the Court looked to additional briefing and other hearings, the Court evaluated the motion under a summary judgment standard. *See In re J & S Props.*, 545 B.R. at 95. It ultimately found that "no genuine dispute of material fact exists as to whether the Trustee exercised her business judgment as to the steps she deemed necessary to protect Estate Property," and thus Swope was entitled to immunity. *Id.* at 96.

On July 27, 2016, the District Court affirmed the Bankruptcy Court's order granting Swope's motion to dismiss. The District Court found that Swope was "entitled to qualified immunity" and that she did not engage in any wrongful or *ultra vires* conduct since she "took appropriate action to administer and preserve the Estate Property" in accordance "with her duties as the trustee." *Phoenician Mediterranean Villa*, 554 B.R. at 756–57.

Phoenician filed this timely appeal.

II

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(a). The District Court exercised jurisdiction under 28 U.S.C. § 158(a). We have appellate jurisdiction under 28 U.S.C. § 158(d). Like the District Court, we review the Bankruptcy Court's legal determinations de novo and its factual findings for clear error. *In re VistaCare Grp., LLC*, 678 F.3d 218, 224 (3d Cir. 2012). A factual finding is clearly

7

erroneous only if we are "left with the definite and firm conviction that a mistake has been committed." *In re W.R. Grace & Co.*, 729 F.3d 311, 319 n.14 (3d Cir. 2013) (citation omitted).

## III

The principal issue on appeal is whether Swope is immune from Phoenician's suit complaining of actions she took between January 16, 2014 and February 7, 2014.[3] The

---

[3] It appears undisputed that the Bankruptcy Court's Order on February 7 provided Swope with absolute quasi-judicial immunity for actions taken thereafter. That order explicitly allowed "changing all locks so that only the Bank and the Trustee have access to the Property," Feb. 7, 2014 Order, at ¶ 3, and prohibited Phoenician from entering "without the express authorization of the Trustee," *id.* at ¶ 8. Because a trustee enjoys absolute immunity from liability when she carries out a bankruptcy court's order, *see In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009) (finding "derived quasi-judicial immunity" applies to trustees acting "pursuant to court order" (citation omitted)); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A Mar. 1981) (per curiam) (listing cases so holding from the First, Second, Fourth, Eighth, and Tenth Circuits), and because the lower courts didn't clearly err when they found Swope faithfully carried out the Bankruptcy Court's February 7, 2014 Order, Swope is not amenable to suit for her later actions.

While Phoenician doesn't explicitly challenge Swope's immunity after February 7, it does make passing complaints about the restrictive nature of Swope's consent to enter the property on several dates after the Order. These criticisms are

Bankruptcy Court held that Swope is entitled to qualified immunity because she acted within her statutory duties and the District Court agreed, finding Swope did not violate clearly established law. We reach the same conclusion based on a straightforward application of *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## A

The Supreme Court held in *Harlow* that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* But if such officials take actions in their official capacity which they "knew or reasonably should have known . . . would violate the [plaintiff's] constitutional rights," they are not entitled to qualified immunity. *Id.* at 815 (emphasis and citation omitted).

It appears clear that Chapter 7 Bankruptcy Trustees like Swope are government officials for purposes of *Harlow*.

---

ineffectual, however, because the terms of the Court's Order gave Swope discretion over Phoenician's ability to enter the property and the record indicates that Swope did allow Phoenician to enter the premises to remove its personal property several times. Although it was not entirely satisfied with the length of each visit or the items it was allowed to remove, Phoenician doesn't point to evidence showing the lower courts clearly erred in finding these decisions consistent with the Court's Order.

Phoenician does not dispute the finding of the lower courts that Swope is a public official generally entitled to qualified immunity. In fact, Phoenician claims that because "the Chapter 7 Trustee is appointed and supervised by the United States Trustee [and] is an officer of the appointing Court, . . . it is appropriate to apply Fourth Amendment limits on government power" to Swope. Phoenician Br. 22. Regardless of the Fourth Amendment analysis, Swope *is* a government official for purposes of immunity. The Chapter 7 Trustee is created by Congress, appointed by and "operating under the aegis of the U.S. Trustee," and entrusted with the "statutory duties . . . to gather and liquidate the property of the estate, to be accountable for the estate, ensure that the debtor performs his or her obligations," and "perform[] [other] adjudicatory and administrative functions." *In re Castillo*, 297 F.3d 940, 950–51 (9th Cir. 2002).

We thus hold that bankruptcy trustees are government officials, entitled under *Harlow* to qualified immunity from § 1983 claims by third parties when they act in their official capacity in a manner that is not contrary to clearly established law. *See* 457 U.S. at 818 & n.30.

B

Qualified immunity, "properly applied, . . . protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted). "To overcome qualified immunity, a plaintiff must plead facts 'showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168–69 (3d Cir. 2016), *cert.*

*denied*, 137 S. Ct. 161 (2016) (quoting *al-Kidd*, 563 U.S. at 735). And an official's conduct violates clearly established law if "there [is] sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that . . . her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). Such precedent must come either from the Supreme Court or a "'robust consensus of cases of persuasive authority' in the Court of Appeals." *Mammaro*, 814 F.3d at 169 (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam)).

In this case, Swope was not plainly incompetent and did not violate clearly established law. We agree with the Bankruptcy Court that there is a "dearth of case law on the topic" of whether a bankruptcy trustee may take control of a building which she is obliged to preserve and which is at imminent risk of destruction or damage, especially in the face of the lack of cooperation by a third-party tenant. *In re J & S Props.*, 545 B.R. at 110.

Rather than point to any case balancing a bankruptcy trustee's duties to preserve the estate under her care in the face of "exigent circumstances" and her duties to a third-party tenant, *id.*, Phoenician cites black-letter Pennsylvania law indicating that self-help eviction is generally impermissible. Because "[s]tate law defines property interests for purposes of procedural due process claims," and Pennsylvania leaseholders are entitled to a trial before being evicted, Phoenician claims that it is clear that "self-help evictions are unlawful in Pennsylvania." Phoenician Br. 20–21 (citing, *e.g.*, *Berman v. City of Philadelphia*, 228 A.2d 189 (Pa. 1967)). Phoenician also argues that since Swope, as trustee of the property, "stands in the shoes of the landlord debtor," Reply Br. 5, 8 (citing *Hays & Co. v. Merrill Lynch, Pierce, Fenner*

11

*& Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir. 1989)), and the lease remained operative even after its rejection by the Bankruptcy Court, *id.* at 8 (citing 11 U.S.C. § 365(h)(1)(A)(ii)), she constructively evicted Phoenician without due process when she received the only key to the building after the locks were changed. Phoenician adds that its inability to remove its personal items from the property after the locks were changed effected an impermissible seizure.

Phoenician's thorough review of Pennsylvania law stands in stark contrast to its failure to acknowledge the many duties imposed upon Trustee Swope by federal bankruptcy law. Under 11 U.S.C. § 704, Swope had to safeguard, liquidate, and administer the estate property for the benefit of creditors. Section 704(a) states that the bankruptcy trustee "shall":

> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

> (2) be accountable for all property received[.]

As the Bankruptcy Court noted, "there is no dispute" that Swope's statutory duties "include protecting and preserving the Estate Property." *In re J & S Props.*, 545 B.R. at 108.

And the events of January 2014 required Swope to act to preserve the estate. Phoenician's inaction caused significant flooding to the debtor's estate and Swope did not have a key to access the building and survey the damage. She

12

accepted the key after the locks had been changed in order to fulfill her duty to preserve the property from further damage. Phoenician points to no case that addressed, much less established, whether such conduct by a trustee amounts to an unconstitutional eviction. In fact, the DOJ's own guidance for bankruptcy trustees notes that for "cases where the property appears to have value for the estate, the trustee must obtain control over the property, which may include changing the locks at the premises . . . ." U.S. Dep't of Justice, Executive Office for U.S. Trustees, *Handbook for Chapter 7 Trustees*, at § 4.C.3.f (applying 11 U.S.C. § 704). The DOJ also notes that trustees "must immediately take all other steps which may be reasonably necessary to preserve the assets." *Id.* Here, the Bankruptcy Court found, and the District Court agreed, that the imminent damage to the estate's largest asset would reasonably lead a trustee in Swope's position to believe that taking control of the property was not only permissible, but statutorily required.

The Supreme Court has cautioned that the question of "objective legal reasonableness" with respect to clearly established precedent should not be applied at too high a level of generality. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Phoenician makes that mistake by noting that its rights to due process of law and to be free of illegal seizure are "quite clearly established." *Id.* But the existence of those clearly established rights sheds no light on whether Swope's actions would violate them in the circumstances presented here. *Id.* at 640. The cases Phoenician cites do not approach the level of specificity required for clearly established law. For example, several of those cases have nothing to do with bankruptcy trustees, *see Soldal v. Cook Cty.*, 506 U.S. 56 (1992); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564

(1972); *Ruiz v. New Garden Twp.*, 376 F.3d 203 (3d Cir. 2004), and the one case that does involve a trustee has nothing to do with a potential conflict between a landlord's duties under state law and a trustee's duty to preserve estate property under federal law. *See Beard v. Braunstein*, 914 F.2d 434 (3d Cir. 1990).

None of the cases upon which Phoenician relies involved a trustee attempting to preserve assets of an estate under her care in the face of past and future damage to those assets. And considering Phoenician's lack of cooperation by giving Swope a key that only opened the outer door, its refusal "to keep the property adequately heated," and its failure to meet at the property and maintain insurance, App. 397, there is no law that clearly establishes the unlawfulness of Swope's actions. Accordingly, we agree with the lower courts that "Swope, in accordance with her duties as the trustee, took appropriate action to administer and preserve the Estate Property." *Phoenician Mediterranean Villa*, 554 B.R. at 756–57. This conclusion is fatal to Phoenician's appeal.

It strains credulity to suggest, as Phoenician does, that "every reasonable official would have understood that what" Swope did constituted an impermissible eviction that violated due process. *al-Kidd*, 563 U.S. at 741 (internal quotation marks and citation omitted). "[W]here an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow*, 457 U.S. at 819 (citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The circumstances of this case required Swope to act quickly to preserve the estate and she did so in a manner not contrary to

14

law. Accordingly, she should not be subject to suit for her actions.[4]

## C

Phoenician's two remaining counterarguments are also unavailing. It first argues that the fact that Swope "filed her emergency motion for turnover and possession shortly after . . . lock[ing] the Phoenician out of the restaurant" (she got the key to the new locks on January 16 and filed on the same day) should be interpreted as an admission by Swope that a reasonable trustee would know she needed a court order for possession before accepting the new key. Phoenician Br. 26. This logic is faulty and would lead to undesirable outcomes. There are several other reasons Swope may have sought the Bankruptcy Court's permission for these actions. As Swope argued, that a trustee seeks to have "her action ratified by a court, out of an abundance of caution, does not mean that she acts improperly" if she acts before the court could respond. Swope Br. 27. In this case, Swope claims she sought the emergency court order as quickly as possible, and accepted the new keys from the debtor only "because of the emergency need to preserve the estate's largest asset" from water and other damage. *Id.*

The Amici explain that bankruptcy trustees often seek post hoc court approval to ratify quick actions they take to preserve an estate based on exigent circumstances. If we were

---

[4] Because we hold that Swope is entitled to qualified immunity, we need not address her contention that she is entitled to absolute quasi-judicial immunity for the actions she took before the Bankruptcy Court's February 7, 2014 Order.

15

to interpret this practice as an admission of wrongful behavior, it would upend years of custom and impair the ability of trustees to protect estates or encourage them to refrain from seeking court supervision of their actions. We eschew such undesirable results.

Phoenician also claims that Swope "gave up her qualified immunity when she testified at the hearing on Phoenician's request for a temporary restraining order." Phoenician Br. 28. According to Phoenician, because "Trustee Swope never raised her immunity from suit at [the] hearing" on January 24, 2014, and instead "testified at that hearing with regard to the specific facts of the lockout," she waived her right to claim immunity later. Phoenician Br. 22.

It does not appear that Phoenician raised this argument in either the Bankruptcy Court or the District Court, *see* Swope Br. 26 (citing docket), so it is forfeited. *See United States v. Joseph*, 730 F.3d 336, 341–42 (3d Cir. 2013). In any event, the claim that Swope waived her immunity is not supported by legal authority. She was not put on notice as to any clear illegality at the emergency hearing; quite to the contrary, the Bankruptcy Court rejected Phoenician's motion for an injunction and temporary restraining order after holding that Phoenician did not establish a likelihood of success on the merits. Moreover, Swope was not required to assert her right to qualified immunity at the January 24, 2014 hearing since it was not a trial on the merits of Phoenician's damages claims against Swope. The hearing was to adjudicate Phoenician's motion for equitable relief and Swope's emergency motion for control over the property. As such, there is no colorable argument of waiver here.

16

## IV

For the reasons stated, we will affirm the order of the District Court affirming the order of the Bankruptcy Court.

IN RE: J & S PROPERTIES, LLC, Debtor

PHOENICIAN MEDITERRANEAN VILLA,
LLC, Appellant
v.
LISA M. SWOPE, Esquire, Trustee of the Bankruptcy Estate
of J & S Properties LLC; JAMES FOCHT; J & S
PROPERTIES, LLC

No. 16-3366

FISHER, *Circuit Judge*, concurring in the judgment.

Bankruptcy trustees play a role in our federal judicial system rooted in centuries of Anglo-American bankruptcy law. Like their predecessors, modern-day trustees perform functions that are essential to the judiciary's orderly disposition of a bankrupt's estate. I would hold that the Chapter 7 bankruptcy trustee in this case (hereinafter Trustee) is immune from suit on the basis of quasi-judicial immunity. I therefore agree with the majority that the judgment of the District Court should be affirmed. In this separate opinion, I explain why, in my view, the doctrine of qualified immunity upon which the majority rests its decision is not properly before this Court, and then set forth my conclusion that the Trustee should be accorded quasi-judicial immunity.

I

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The presumption is that qualified rather than absolute immunity is sufficient to protect

1

government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991). The Supreme Court has thus admonished that the extension of absolute immunity should be "quite sparing" and not extended "any further than its justification would warrant." *Id.* at 487.

It is my respectful submission, however, that the Trustee's *Harlow* qualified immunity defense is not adequately preserved for our consideration. Qualified immunity "is an affirmative defense that must be pleaded by a defendant official." *Harlow*, 457 U.S. at 815. The Supreme Court has therefore long held that "the burden of pleading it rests with the defendant." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing Fed. R. Civ. P. 8(c)); *see also Crawford-El v. Britton*, 523 U.S. 574, 595 (1998); *Thomas v. Independence Twp.*, 463 F.3d 285, 293 (3d Cir. 2006). As the majority recognizes, the Trustee failed to invoke *Harlow* qualified immunity before the Bankruptcy Court. Quasi-judicial immunity is the only defense she pleaded. While our cases permit a defendant to "raise qualified immunity as a defense at trial," *Sharp v. Johnson*, 669 F.3d 144, 168 (3d Cir. 2012), we have not allowed a defendant to raise *Harlow* qualified immunity for the first time on appeal. And understandably so, since the Supreme Court has rejected efforts by courts to alter established rules of procedure in immunity cases. *See Crawford-El*, 523 U.S. at 594-97; *Johnson v. Jones*, 515 U.S. 304, 317-18 (1998); *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U. S. 163, 164-69 (1993); *Gomez*, 446 U.S. at 639-40.

As I read the opinions of the Bankruptcy Court and the District Court, neither decided this case on the basis of *Harlow* qualified immunity. The Bankruptcy Court's opinion does not cite any *Harlow* qualified immunity cases. And while the District Court did reference *Harlow*'s standard once, that brief

2

mention appears only in the court's description of Phoenician's arguments on appeal. *See* 554 B.R. 747, 755 (W.D. Pa. 2016) ("[Phoenician] argues that Trustee Swope is not entitled to qualified immunity because she violated its clearly established rights and because a reasonable Chapter 7 [t]rustee would have believed that evicting [Phoenician] from the restaurant without a court order violated its Fourth Amendment rights and deprived it of procedural due process."). The District Court instead cited two quasi-judicial immunity decisions—*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), and *In re Castillo*, 297 F.3d 940 (9th Cir. 2002)—for the proposition that such immunity "is historically accorded to trustees." 554 B.R. at 756. Though the Bankruptcy Court and District Court each stated that the Trustee "is entitled to qualified rather than absolute immunity" because she "did not act pursuant to a court order," *id.*; *see* 545 B.R. 91, 113-14 (Bankr. W.D. Pa. 2015), that proposition simply refers to the fact that quasi-judicial immunity can at times be qualified rather than absolute. *See* 6 *Collier on Bankruptcy* ¶ 704.04[1], p. 704-13 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017) ("Trustees who act within the scope of the authority and discretion that they are given have been held entitled to quasi-judicial immunity, and to the extent that they are executing orders of the court, they have been held entitled to absolute immunity.") (footnote omitted).

That quasi-judicial immunity can be qualified does not mean that *Harlow* qualified immunity is at issue. Unlike quasi-judicial immunity, *Harlow* qualified immunity is a contemporary doctrine. In *Harlow* the Supreme Court "completely reformulated qualified immunity along principles not at all embodied in the common law, replacing the inquiry into subjective malice so frequently required at common law with an objective inquiry into the legal reasonableness of the

3

official action." *Anderson v. Creighton*, 483 U.S. 635, 645 (1987). While quasi-judicial immunity is rooted in the common law, *see infra* Part II, *Harlow* qualified immunity is not. A distinction between the two doctrines exists and it should be observed.

Because neither the Bankruptcy Court nor the District Court decided this case on the basis of *Harlow* qualified immunity, the issue is not properly before us. Like the Supreme Court, we are "a court of review, not first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005); *see Wood v. Milyard*, 566 U.S. 463, 473 (2012) ("[A]ppellate courts ordinarily abstain from entertaining issues that have not been raised and preserved in the court of first instance."). This precept applies as well in bankruptcy cases. Our precedent instructs district courts to follow "the general rule that when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered . . . on appeal." *In re Kaiser Grp. Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2004). I would therefore not absolve the Trustee of her obligation to raise *Harlow* qualified immunity before the Bankruptcy Court.

II

Whether or not the Trustee sufficiently preserved her *Harlow* qualified immunity defense, I believe this case should be decided based on the historical tradition of according quasi-judicial immunity to bankruptcy trustees sued by third parties for actions taken within the scope of their official duties.

It has long been understood that the various immunities from suit possessed by public officials at common law in 1871, the year Congress passed 42 U.S.C. § 1983, are retained in suits against state officials under that statute. *See, e.g.*, *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951); *Rehberg v. Paulk*, 566 U.S. 356, 361-62 (2012). The availability and scope of these

4

immunities is the same in actions brought against federal officials under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *See Butz v. Economou*, 438 U.S. 478, 503-04 (1978). Among the immunities firmly established in the common law is the absolute immunity judges enjoy for actions when carrying out their judicial functions. *See Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872) (Describing judicial immunity as "the settled doctrine of the English courts for many centuries" that "has never been denied . . . in the courts of this country."). Pre-1871 common-law courts also extended quasi-judicial immunity to public servants performing "official acts involving policy discretion but not consisting of adjudication." *Burns*, 500 U.S. at 500 (Scalia, J., concurring in the judgment in part and dissenting in part).

In *Antoine v. Byers & Anderson*, *supra*, the Supreme Court adopted a two-step approach for determining when quasi-judicial immunity attaches to the acts of officials other than judges who are involved in the judicial process. First, "[i]n determining which officials perform functions that might justify full exemption from liability," courts must undertake "a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Antoine*, 508 U.S. at 432 (internal quotation marks omitted). Next, courts must "consider whether judges, when performing that function, were themselves entitled to absolute immunity." *Id.* at 435. Stated differently, "judicial immunity is extended to officials other than judges" when "their judgments are functionally comparable to those of judges—that is, because they, too, 'exercise discretionary judgment' as part of their function." *Id.* at 436 (brackets omitted) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)). This approach accords with the "'touchstone'" for the applicability of judicial immunity, namely, "'the performance of the function of

5

resolving disputes between parties, or of authoritatively adjudicating private rights.'" *Id.* at 435-36 (quoting *Burns*, 500 U.S. at 500 (opinion of Scalia, J.)). And while *Antoine*'s functional approach "is tied to the common law's identification of the functions that merit the protection of absolute immunity," the Supreme Court's precedents "have not mechanically duplicated the precise scope of the absolute immunity that the common law provided to protect those functions." *Rehberg*, 566 U.S. at 364.

Applying the analytical framework set forth in *Antoine*, Chapter 7 bankruptcy trustees should be accorded quasi-judicial immunity for actions taken within the scope of their duties that are necessary to the bankruptcy court's adjudication of a debtor's estate. The bankruptcy trustees of today perform quasi-judicial functions that trace back to their sixteenth-century English predecessors. England's first bankruptcy laws were passed in 1542 and 1570. *See* 34 & 35 Hen. 8 c. 4 (1542-43); 13 Eliz. c. 7 (1570). The latter statute "filled out the basic parameters of the English bankruptcy system . . . and remained in effect until the time of the American Revolution." Charles Jordan Tabb, *The History of the Bankruptcy Laws in the United States*, 3 Am. Bankr. Inst. L. Rev. 5, 8 (1995). In addition to naming acts of bankruptcy, the law vested in the Lord Chancellor "power to appoint, by commission of the great seal, certain persons to exercise the powers of the Chancellor over the person and property of the bankrupt." 8 William S. Holdsworth, *A History of English Law* 470 (3d ed. 1922). These commissioners "had substantial powers, originally akin to a combination of today's trustee and bankruptcy judge." Tabb, *supra,* at 8. They supervised a process that "mirrored a modern straight liquidation case" wherein they would perform "normal trustee-like activities of collecting, liquidating, and distributing the debtor's property to creditors, and more

6

traditional judicial activities, such as seizing property, summoning persons to appear before them, and committing people to prison." *Id.* at 8-9. A statute of 1707, 4 Anne c. 17, delegated these trustee-like duties to assignees—so-called because they were assigned the bankrupt's property. *See also Central Va. Community College v. Katz*, 546 U.S. 356, 370 (2006) (observing that English bankruptcy assignees were "the 18th-century counterparts of today's bankruptcy trustees").

Early American bankruptcy law followed the English system in many respects. Though the Framers gave Congress the power to "establish . . . uniform Laws on the subject of Bankruptcies throughout the United States," U.S. Const. art I, § 8, cl. 4, no permanent bankruptcy legislation existed until 1898. Temporary legislation was in place, however, from 1800 to 1803, from 1841 to 1843, and from 1867 to 1878, each passed in the wake of a major financial panic. At every step of the way, Congress retained the three-part English model: bankruptcy jurisdiction was placed in the district courts, those courts appointed commissioners (called "registers" in the 1867 Act and "referees" in the 1898 Act) to assist the judges in executing their duties, and assignees would perform functions critical to the liquidation and distribution of the bankruptcy estate. *See* Act of Apr. 4, 1800, ch. 19, 2 Stat. 19 (repealed 1803); Act of Aug. 19, 1841, ch. 9, 5 Stat. 440 (repealed 1843); Act of Mar. 2, 1867, ch. 176, 14 Stat. 517 (repealed 1878); Act of July 1, 1898, ch. 541, 30 Stat. 544 (repealed 1978).

Another antecedent to the modern-day bankruptcy trustee can be found in the equity receivership commonly used during the late nineteenth and early twentieth centuries to assist with corporate reorganizations, especially with regard to struggling railroads. *See* Tabb, *supra*, at 21-22. As this Court has previously recognized, "[a] bankruptcy trustee is the 'statutory successor to the equity receiver' and 'just like an

equity receiver, a trustee in bankruptcy is working in effect' for the court overseeing the bankruptcy proceeding, 'administering property that has come under the court's control by virtue of the Bankruptcy Code.'" *In re VistaCare Grp., LLC*, 678 F.3d 218, 229 (3d Cir. 2012) (brackets omitted) (quoting *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998)). So to the extent equity receivers and nineteenth century assignees performed duties that required the exercise of discretionary judgment to assist courts in adjudicating bankruptcy-related disputes, they would have enjoyed quasi-judicial immunity from suit under the common law.

The courts of appeals have uniformly held that the procedural and substantive immunities of equity receivers at common law carried over to the bankruptcy trustees of today. Thus, there is considerable acknowledgment that the common law procedural immunity known as the "*Barton* doctrine," *see Barton v. Barbour*, 104 U.S. 126, 128-29 (1881), whereby an equity receiver could not be sued without leave of the court that appointed him, applies to the present-day bankruptcy trustee. *See In re VistaCare Grp.*, 678 F.3d at 232; *Carroll v. Abide*, 788 F.3d 502, 505 n.12 (5th Cir. 2015) (collecting cases from ten circuits). Among the rationales courts have articulated in favor of the *Barton* doctrine is the "strong interest" "the court that appointed the trustee has . . . in protecting him from unjustified personal liability for acts taken within the scope of his official duties." *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996); *see also Vass v. Conron Bros. Co.*, 59 F.2d 969, 970 (2d Cir. 1932) (L. Hand, J.) ("A trustee is equally an officer of the court; and [like a receiver] his possession is protected because it is the court's . . . ." (citation omitted)).

There is also a broad consensus that bankruptcy trustees are substantively immune from suit under the doctrine of quasi-judicial immunity. Generally speaking, there are "two types of

8

actions against trustees: breach of fiduciary duty claims brought by parties interested in the administration of the estate, and claims in tort or contract brought by third parties." *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 7 n.4 (1st Cir. 1999). It is settled that a bankruptcy trustee may be held personally liable for breach of fiduciary duty. *See Mosser v. Darrow*, 341 U.S. 267, 271, 274 (1951); *In re McKenzie*, 716 F.3d 404, 413 (6th Cir. 2014); *In re Mailman Steam Carpet Cleaning*, 196 F.3d at 6-7. Courts have also held that bankruptcy trustees are covered by quasi-judicial immunity when acting pursuant to an express court order. *See, e.g.*, *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A Mar. 1981) (per curiam).

Phoenician's suit is of the second type, as it alleges no breach of fiduciary duty. Rather, Phoenician is a third party raising a claim sounding in tort. In such cases, "a bankruptcy trustee is ordinarily entitled to quasi-judicial immunity from suit . . . for actions taken in his official capacity." *In re McKenzie*, 716 F.3d at 413; *see In re Mailman Steam Carpet Cleaning*, 196 F.3d at 7 n.4; *Ziegler v. Pitney*, 139 F.2d 595, 596 (2d Cir. 1943); *McRanie v. Palmer*, 2 F.R.D. 479, 481 (D. Mass. 1942). This immunity was recognized long ago in *McNulta v. Lochridge*, 141 U.S. 327 (1891), when the Supreme Court held that equity receivers cannot be held personally liable in suits by third parties—the suit instead can lie only against the receivership itself:

> So long as the property of the corporation remains in the custody of the court and is administered through the agency of a receiver, such receivership is continuous and uninterrupted until the court relinquishes its hold upon the property, though its *personnel* may be subject to repeated changes. Actions against the receiver are in

law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences and liabilities are official and not personal, and judgments against him as receiver are payable only from the funds in his hands.

*Id.* at 332 (emphasis in original).

While the quasi-judicial immunity of bankruptcy trustees does not extend to acts by a trustee that are *ultra vires*, *see, e.g.*, *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967), a bankruptcy trustee "is not required to obtain prior court approval in order to invoke quasi-judicial immunity from suit by a third party for actions taken by the trustee on behalf of the estate and within the scope of his authority." *In re McKenzie*, 716 F.3d at 414. The Bankruptcy Court and the District Court thus drew an unnecessary distinction between "the absolute immunity analyses associated with actions taken pursuant to a court order [and] the qualified immunity analyses of actions undertaken absent an authorizing order of court." 545 B.R. at 104 (emphasis deleted); *see* 554 B.R. at 756. As already noted, while it is true that a "trustee's derivative judicial immunity is qualified" in certain respects, *see* 1 Joan N. Feeney *et al.*, *Bankruptcy Law Manual* § 4:16, p. 799 (5th ed. 2016), the qualified nature of a bankruptcy trustee's quasi-judicial immunity is different from the doctrine of *Harlow* qualified immunity.

Against this background, granting the Trustee quasi-judicial immunity in this case is not a close call. The Trustee's efforts to secure the property of J & S's estate—here, the real property leased to Phoenician—were discretionary actions performed within the scope of her statutory duties. The Bankruptcy Code requires Chapter 7 trustees to "collect and reduce to money the property of the estate for which such

10

trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest," and, in connection with this responsibility, to "be accountable for all property received." 11 U.S.C. § 704(a)(1), (2). Both the Bankruptcy Court and District Court noted the undisputed fact that the Trustee's duties included safeguarding the estate property. *See* 545 B.R. at 108; 554 B.R. at 756. Those courts therefore sensibly found that "a Chapter 7 [t]rustee has a duty to secure and preserve estate assets, including changing the locks to a building when circumstances warrant." 545 B.R. at 113; *see* 554 B.R. at 757.

This conclusion is consistent with the guidance provided by the Department of Justice's Office of the United States Trustee, which advises Chapter 7 trustees:

> In those cases where the property appears to have value for the estate, the trustee must obtain control over the property, which may include changing the locks at the premises, hiring guards, etc. The trustee also must immediately take all other steps which may be reasonably necessary to preserve the assets. It is not always sufficient to wait until after the meeting of creditors to take action to preserve assets.

U.S. Dep't of Justice, *Handbook for Chapter 7 Trustees* § 4.C.3.f, p. 4-6 (2012) (citing 11 U.S.C. § 704). Neither the Bankruptcy Code nor the Trustee Handbook specifies how trustees are to exercise their duty to safeguard estate property. A trustee must accordingly "exercise a discretionary judgment as part of th[is] function." *Antoine*, 508 U.S. at 436 (internal quotation marks omitted). The Trustee is thus entitled to quasi-judicial immunity for the discretionary acts she took in furtherance of her duty to safeguard the property of J & S's estate.

&ast;  &ast;  &ast;

Because I would hold that the Trustee is shielded from liability under the doctrine of quasi-judicial immunity, I concur in the judgment.